**John WOODLAND, et al., Plaintiffs,**

v.

**CITY OF HOUSTON, et al., Defendants.**

**Civ. A. No. H–82–1076.**

United States District Court, S.D. Texas, Houston Division.

Feb. 20, 1990.

---

James C. Harrington, Texas Civil Liberties Union Foundation, Inc., Austin, Tex., for plaintiffs.

John E. Fisher, Sr. Asst. City Atty., Houston, Tex., for defendants.

## FINAL JUDGMENT AND PERMANENT INJUNCTION

HUGHES, District Judge.

### 1. *Background.*

John Woodland, who applied for employment with the Houston Fire Department, Ramdeo Jagassar, who applied for employment with the Houston Police Department, and Chris Goss, who applied for employment with the Houston Airport Police, sued the city urging that the city's pre-employment polygraph examinations were arbitrary and were unreasonably intrusive, under both the United States and Texas Constitutions. They sued for themselves and for others who were similarly situated as a class seeking damages, reinstatement, and injunctive relief.

The class was certified for the purpose of declaratory and injunctive relief under Rule 23(a) and (b)(2). The liability questions were tried to a jury, and the damages questions were tried later before the court.

### 2. *Jury Verdict.*

The jury found that the questions asked by Houston were unreasonably intrusive under separate definitions for the federal and state constitutional standards.

### 3. *Individual Damages.*

A. John Woodland. Had John Woodland been employed rather than rejected by Houston, he would have received from the city $184,358.77, as wages and other benefits (after having deducted what he had earned) from the time of his rejection until this judgment.

B. Ramdeo Jagassar. Had Ramdeo Jagassar been employed rather than rejected by Houston, he would have received from the city $134,615.47, as wages and other benefits (after having deducted what he had earned) from the time of his rejection until this judgment.

C. Chris Goss. Had Chris Goss been employed rather than rejected by Houston, he would have received from the city $69,381.73, as wages and other benefits (after having deducted what he had earned) from the time of his rejection until this judgment.

### 4. *Class Findings.*

The individual plaintiffs are representative of the class of applicants to the three city departments using the polygraph in pre-employment screening for jobs in security-sensitive positions, like fire and police; therefore, under the United States Constitution and independently under the Texas Constitution, the questions asked and the process used as part of Houston's pre-employment polygraph procedures were unreasonably intrusive as applied to the class members.

The class is composed of those people who applied for employment with the Fire, Police, or Airport Police Departments of the City of Houston since March 1980 and who were rejected because of some information or conclusion derived from the polygraph process, including the pretest inter-

view and the examiner's opinion of the applicant.

5. *Class Conclusions.*

■ The questions asked and the process used as part of Houston's pre-employment polygraph procedures violate the constitutional limits on permissible governmental action established by the United States Constitution to the injury of the class. Independently, those pre-employment polygraph procedures violate the limits on permissible governmental action established by the Texas Constitution to the injury of the class. This is an independent ground of recovery for the plaintiffs and the class under the separate and distinct content of the constitution and common law of Texas, which is in addition to, more fundamental than, and greater than that afforded by the National Constitution.

6. *Declaratory Judgment.*

Under 28 U.S.C. §§ 2201 and 2202, as a matter of the federal and state constitutions, the pre-employment polygraph procedures used by the City of Houston are declared to be an unreasonable and illegal intrusion upon applicants for employment in the Fire, Police, and Airport Police Departments.

7. *Injunction.*

■ A. Scope. This injunction applies directly, under penalty of contempt, to the City of Houston, its officers, agents, employees, and others acting in concert with it.

B. Duration. This injunction is permanent.

C. Indirect Violation. The City of Houston is enjoined, directly or indirectly, from asking questions during the pre-employment process that do not have an articulable rational basis for discovering whether an applicant possesses actual qualifications reasonably related to the particular job; this prohibition applies to the specific methods used with the class members and any variation of it that suffers from the same irrational biases or unnecessarily intrusive information gathering.

D. Prohibited Actions. During the pre-employment screening of applicants for positions with the City of Houston's Fire, Police, and Airport Police Departments, use of a polygraph test and pretest interviews of the applicant shall not include questions that:

(1) Intrude into an applicant's privacy or private concerns and affairs beyond matters reasonably related to actual requirements for the job which the applicant seeks; and

(2) Have not been narrowly, specifically, and directly tailored to the applicant's potential for capable performance of the job; and

(3) Inquire into matters that the city has other reasonable alternative methods for acquiring the information and to which it is legally entitled; and

(4) Have been prohibited specifically by this injunction.

(5) Inquire about:

a. The applicant's religion, religious practices, or lack of them;

b. The applicant's consensual sexual activity, except to the extent that the act was unlawful in the jurisdiction where it took place and involved a minor and occurred within three years of the screening;

c. Extramarital sex;

d. Crimes committed as a child, except to the extent they involved a felony or a physical injury or a sexual assault in the jurisdiction within which they occurred, or the applicant was tried and convicted for them as an adult;

e. The use of marijuana, except to the extent that it was used unlawfully by the applicant in the jurisdiction where it was used within the six months preceding the screening process; illegal use of marijuana cannot be used to disqualify an applicant unless similar level offenses are similarly used as disqualifications, like traffic, drinking, or hunting violations;

f. Adult criminal behavior, except to the extent that the applicant commit-

ted a felony, a sexual assault, theft, a Class A misdemeanor, or caused serious injury;

g. Theft, unless it involved at least $25 and occurred within the twelve months before the screening process or there have been four thefts within the three years preceding the screening process;

h. Membership in organizations, except to the extent that the applicant is currently or, within the previous five years, has been an active member of an organization which advocates violent, unlawful acts;

i. Drug use, unless the questions are about the applicant's illegal use of uppers, downers, steroids, or cocaine in the last twelve months; or hallucinogens within five years; or heroin within twelve months and more than one use in five years;

j. Criminal behavior by family members except to the extent that it involves adult criminal behavior by a member of the applicant's family, relative, or friends with whom the applicant lives or with whom the applicant has such a relationship that would adversely affect the applicant's ability to uniformly enforce the law or with whom the applicant has engaged in joint criminal behavior as an adult, to the extent such an inquiry is allowed;

k. Confidential medical information, unless done as part of an examination by licensed medical personnel; and

l. Matters into which the City cannot otherwise legally inquire.

E. Required Acts.

(1) Recordation. To insure evidence of non-intrusiveness of future polygraph procedures, the City of Houston shall also require that either audio or audiovideo recordings be made of all polygraph procedures and preserved for six months after the final written rejection or acceptance. Applicants who are rejected who have been subjected to the polygraph process shall be given a detailed explanation of the reasons for the rejection, an opportunity to explain their performance, and time after the review to appeal the rejection.

(2) Notices.

a. Future Applicants. Applicants for positions in the three departments shall be given a written notice of this injunction, the taped record, and their right to review it and to appeal:

A United States Court has ordered that there are many limits to the City of Houston's use of polygraph tests in the screening of people who apply for work in the Fire, Police, and Airport Police Departments. The city must keep a tape of your interview and test for six months, and you have the right to review it. If you are rejected, you have a right to a written explanation and an appeal.

b. Past References. The City of Houston shall advise anyone that it has already provided with information about the class's polygraph tests or results, either in writing or orally, that the polygraph tests were improperly administered and violated the law and shall request in writing that all references about Houston's pre-employment polygraph procedures be removed from files on the class members.

c. Past Applicants. The City of Houston shall publish this notice (no smaller than 3 inches by two columns) to class members on Monday, Wednesday, and Friday, March 5, 7, and 9, 1990, in the Houston *Post* and the Houston *Chronicle* and post it at all locations in city offices and facilities where employment notices are posted:

**NOTICE TO APPLICANTS TO THE CITY OF HOUSTON'S FIRE, POLICE, AND AIRPORT POLICE DEPARTMENTS**

There is a lawsuit in this federal court on behalf of all applicants to the City of Houston's Fire, Police, and Airport Police Departments who were denied employment at any time after March 1, 1980, because of the City's

use of pre-employment polygraph procedures. There is a judgment in favor of the class that orders:

1. The City of Houston to destroy all records of the polygraph examinations and interviews that were the source of a class member's application being denied.

2. An applicant who was denied employment as a result of the City of Houston's pre-employment polygraph procedures since March 1, 1980, may reapply for employment with the City of Houston before October 1, 1990.

3. If you reapply, the earlier polygraph results will not be used at all, directly or indirectly, in reviewing your new application, and the fact that you are a member of the class in this lawsuit will not be used against you.

For further information please contact:

Employment Counselor
City of Houston                    or
901 Bagby Street
Houston, Texas 77002
(713) 247–2000

James C. Harrington
Texas Civil Liberties
  Union Foundation, Inc.
1611 East First Street
Austin, Texas 78702–4455
Attorney for the Class.

By order of:

Lynn N. Hughes
United States District Judge
Southern District of Texas

Civil Action No. 82–1076, Woodland v. City of Houston

---

(3) File Cleaning. The City of Houston shall destroy, without copying or otherwise preserving the contents, all polygraph examination documents and delete from the records in its control or possession all references to polygraph tests administered to Woodland, Jagassar, and Goss by the City of Houston, except the files maintained by the Legal Department about this case, which files are to be kept confidential and within the Legal Department's exclusive control. The City of Houston shall destroy all polygraph examination documents and delete from the records in their control or possession all references to polygraph tests administered to class members by the city.

(4) Log of Class Members. The City of Houston shall make, maintain in its Legal Department, and provide to the plaintiffs a confidential log of all those who took a polygraph examination, but not kept in the member's personnel file.

(5) Re–Applications. If before October 1, 1990, a class member applies to the City of Houston for employment, the City of Houston will permit that person to reapply, waiving current age and physical requirements and completely disregarding the whole, earlier pre-employment polygraph procedures, except to the extent that the applicant made an admission of objective fact about matters which would otherwise disqualify the applicant for employment; the City shall not take into adverse account that an applicant is a class member in this action. Woodland, Jagassar, and Goss may reapply before April 1, 1990, under the same conditions.

8. *Attorney's Fees and Costs.*

The plaintiffs have also sought attorneys' fees and costs. The reasonable attor-

ney's fees for the necessary services in the prosecution of this action for the plaintiffs and the costs reasonably necessary properly to pursue this litigation, in addition to those taxed as costs of court, are $102,551.00.

9. *Award.*

It is adjudged that from the City of Houston these people recover severally these amounts:

A. John Woodland: Damages and pre-judgment interest of $184,358.77;

B. Ramdeo Jagassar: Damages and pre-judgment interest of $134,615.47;

C. Chris Goss: Damages and pre-judgment interest of $69,381.73; and

D. Woodland, Jagassar, and Goss, jointly and severally:

(1) Attorney's fees of $94,275.00;

(2) Costs of $8,276.00;

(3) Court costs; and

(4) Post-judgment interest at 7.97% per annum.